# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JOHN W. H.,[1]

           Plaintiff,

    v.                              8:23-CV-1256
                                       (MJK)

LELAND DUDEK,
Acting Commissioner of Social Security

           Defendant.

---

LAWRENCE D. HASSELER, ESQ., for Plaintiff
HUGH D. RAPPAPORT,  Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the final decision of the Commissioner of Social Security, denying his application for benefits. (Dkt. 1). This matter was referred to this Court for all proceedings and entry of a final judgement, pursuant to N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

§ 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. 4). Both parties filed briefs (Dkt. Nos. 11, 19, 20), which the court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

## I.    PROCEDURAL HISTORY

On May 3, 2021, Plaintiff filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. (Administrative Transcript ("T.") 265-71).[2] Plaintiff's application was denied. (T. 83, 96). Subsequently, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (T. 123-24). On February 23, 2022, Plaintiff, and vocational expert ("VE") Robert Baker testified by telephone before ALJ Brian LeCours.[3] (T. 31-67). On March 29, 2022, ALJ LeCours issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T. 22). On June 23, 2022, the Appeals Council denied Plaintiff's request for review. (T. 1-3). The parties thereafter stipulated to remand the matter to the Social Security Administration for further proceedings. (T. 1350-52). After a second hearing, ALJ LeCours again issued an unfavorable decision finding that Plaintiff was not disabled. (T. 1280-

---

[2] The Administrative Transcript is found at Dkt. No. 10. Citations to the Administrative Transcript will be referred to as "T" and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns. All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system.

[3] ALJ LeCours originally held a telephone hearing on January 21, 2022. But due to technical difficulties with the recording, the hearing was re-convened on February 23, 2022. (T. 10, 33).

1316, 872-86). Plaintiff timely appealed by filing the operative complaint. (Dkt. No. 1).

## II.   GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, a plaintiff's

> physical or mental impairment or impairments [must be] of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B). The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment,

3

the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience . . .. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform whether there is other work which the claimant can perform.

*Selian v. Astrue*, 708 F. 3d 409, 417 (2d Cir. 2013); *see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian*, 708 F. 3d at 418. But, if the plaintiff establishes that their impairment prevents them from performing their past work, the burden shifts to the Commissioner to prove the final step. *Id.*

## B. Scope of Review

In reviewing a final decision of the Commissioner, courts are "limited to" analyzing "whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F. 3d 145, 151 (2d Cir. 2012); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F. 3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera*, 697 F. 3d at 151. It must be "more than a

4

scintilla" of evidence scattered throughout the administrative record. (*Id.*). But, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F. 3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F. 2d 255, 258 (2d Cir. 1988); *see also Selian*, 708 F. 3d at 417 ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F. 2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F. 2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See Miles v. Harris*, 645 F. 2d 112, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F.

Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279,

2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.    __THE ALJ'S DECISION__

The ALJ determined at step one of the sequential evaluation that Plaintiff

had not engaged in substantial gainful activity since September 14, 2019, the

alleged onset date. (T. 874).[4] Next, the ALJ found that Plaintiff had the following

severe impairments: anxiety disorder; depressive disorder; Crohn's disease and

inflammatory bowel disease. (T. 875). At step three, the ALJ determined that

Plaintiff's impairments did not meet or medically equal the criteria of one of the

listed impairments in 20 C.F.R. Part 404. Subpart P, Appendix 1 (20 C.F.R.

404.1520(d), 404.1525, 404.1526) (T. 875).

Next, the ALJ found that Plaintiff had the residual functional capacity

("RFC"):

> to perform a full range of work at all exertional levels but with the
> following non-exertional limitations: the claimant requires ready access
> to a restroom, which is defined as a restroom on work premises; he can
> perform unskilled tasks requiring little or no judgement with simple
> duties that can be learned on the job in a short period of time; he can
> perform low stress work, which is defined as work with simple work-
> related decisions and few workplace changes; he can occasionally
> interact with the general public, coworkers, or supervisors; he would be
> off-task no more than five percent of the workday.

---

[4] During the February 23, 2022, hearing the ALJ mentioned that Plaintiff amended the onset date
to November 5, 2020.

(T. 877).

In making the RFC determination, the ALJ stated that they considered all of Plaintiff's symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (*Id.*). The ALJ further noted that they considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (T. 884). Finally, at step five, the ALJ found that considering Plaintiff's age, education, RFC as well as the VE's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 885). Accordingly, the ALJ concluded that Plaintiff was not disabled. (*Id.*).

## IV.   <u>ISSUES IN CONTENTION</u>

Plaintiff argues that remand is warranted because the ALJ's determinations were not supported by substantial evidence and are affected by error of law. Specifically, Plaintiff contends that the ALJ erred by:

1) failing to consider Plaintiff's combined limitations within the context of a full-time work setting;

2) not complying with the AC's directive in the remand order and failed to properly consider the disability rating assigned by the VA; and

3) not complying with the directive in the remand order and failing to properly explain or support his rejection of treating source statements.

(Plaintiff's Brief ("Pl. Br.") pgs. 12-24) (Dkt. No. 11).

7

Defendant contends that the Commissioner's determination should be affirmed because it was supported by evidence that is "adequate" to persuade "a reasonable mind" and Plaintiff has failed to sustain his burden of establishing that it is tainted by any reversible error. (Defendant's Brief ("Def. Br.") pgs. 3-20) (Dkt. No. 19).

For the reasons stated below, the Court finds that remand is not warranted on the bases raised by Plaintiff, and the Commissioner's decision denying disability is affirmed.

## V.    EVALUATION OF MEDICAL EVIDENCE

### A. Legal Standard

According to the applicable regulations, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017). The ALJ must "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." *Id*. at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed.

Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [they] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinions with objective medical evidence and supporting explanation.").

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medical source

is supported, or not supported, by the entire record.") *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

An ALJ must also consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id*. at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id*. at §§ 404.1520c(b)(3), 416.920c(b)(3).

## B. Shahzad Rashid, D.O. and Pat Parker, Licensed Clinical Social Worker

On October 12, 2021 and January 10, 2023, Plaintiff's psychiatrist, Dr. Rashid, offered two identical medical opinions about Plaintiff's mental RFC using check-box questionnaires. (T. 568-70, 1547-49). In both opinions, Dr. Rashid opined that Plaintiff's ability to understand, remember, and carry out instructions was affected by his impairment. (T. 568, 1547). Specifically, Dr. Rashid opined that Plaintiff had: (1) no limitations understanding and remembering simple instructions, carrying out simple instructions, and had the ability to make judgments on simple work-related decisions; (2) moderate limitations understanding and remembering complex instructions; and (3) marked limitations carrying out complex instructions and making judgments on complex work-related

decisions. (*Id*.). To support his opinions, Dr. Rashid stated, "[Plaintiff's] depressed mood and anxiety interfere with concentration and ability to understand, recall, and make [judgments] regarding complex tasks or decisions." (*Id*.).

Dr. Rashid also opined that Plaintiff's ability to interact appropriately with supervisors, co-workers, the public as well as respond to changes in a routine work setting was affected by his impairment. (T. 569, 1548). Dr. Rashid noted that Plaintiff had marked limitations in his ability to interact appropriately with supervisor(s); and extreme limitations in interacting appropriately with the public, co-workers and responding appropriately to usual work situations and changes in a routine work setting. (*Id*.). To support this assessment, Dr. Rashid stated that "[Plaintiff] suffers from chronic, labile and depressed moods and panic attacks for [the] past several years that continue to markedly and extremely impair his social and occupational functioning despite pharmacological and non-pharmacological treatments. (*Id*.). Nevertheless, Dr. Rashid indicated that Plaintiff would not be disruptive to co-workers. (*Id*.). Dr. Rashid further opined that Plaintiff's symptoms of chronic depressed moods and panic attacks impaired his ability to concentrate and his ability to persist working or adapting to the environment because clinical assessments determined that Plaintiff's symptoms of severe anxiety and depressed moods remained mildly responsive to pharmacological and non-pharmacological treatments. (*Id*.). Lastly, Dr. Rashid opined that Plaintiff would be off task more

than twenty-five percent of the day and was able to manage benefits in his own interest. (T. 569-70, 1548-49). Based on Plaintiff's history, Dr. Rashid opined the limitations found were first present "at least several years prior to January 18, 2018. (T. 1549).

On January 23, 2023, Ms. Parker completed the same check-box questionnaire as Dr. Rashid. (T. 1551-1553). Ms. Parker opined that Plaintiff's ability to understand, remember, and carry out instructions was affected by his impairment. (T. 1551). They opined that Plaintiff had: (1) moderate limitations understanding and remembering simple instructions, carrying out simple instructions and in making judgments on simple work-related decisions; and (2) marked limitations understanding and remembering complex instructions, carrying out complex instructions, and in the ability to make judgements on complex work-related decisions. (*Id*.). To support this opinion, Ms. Parker noted anxiety and depressed mood in addition to worrying about psychical health impacting all aspects of work-related activities. (*Id*.). Ms. Parker also opined that Plaintiff had extreme limitations in their ability to interact appropriately with supervisors, co-workers, and the public as well as respond to changes in a routine work setting. (T. 1552). In support, Ms. Parker stated that Plaintiff struggled with constant worrying, anxiety, and depression about all aspects of his personal life. (*Id*.). Further, they opined that Plaintiff would be off task more than twenty five percent of the day due

to anxiety about his physical health. (*Id.*).  Ms. Parker noted that Plaintiff was constantly exerting effort in his ability to concentrate, persist, or maintain pace and the ability to adapt or manage oneself, but his depression and anxiety prevents success. (*Id.*). Despite these limitations, Ms. Parker opined that Plaintiff would not be disruptive to co-workers and could manage benefits in his own interest. (T. 1553). Ms. Parker also considered Plaintiff's limitations, which both providers opined were present before the onset date. (*Id.*).

The ALJ found Dr. Rashid and Ms. Parker's opinions "not [to be] persuasive regarding the marked to extreme degree of functional limitations, and only partially persuasive regarding the nature of [Plaintiff's] limitations. (T. 879). The ALJ noted that it was significant that Dr. Rashid opined that Plaintiff's limitations "started at least several years prior to" the onset date and Ms. Parker opined that Plaintiff's limitations began in October 2018. (T. 879, 1553, 1549). The ALJ believed it was important to assess the consistency of these opinions with the evidence of record. (T. 880). Notably, the ALJ stated that "neither Dr. Rashid nor Ms. Parker made any effort to explain how Plaintiff worked full-time in the demanding position of a corrections officer until September 2019 if he had such "marked" or "extreme" limitations, especially for 'several years.' (T. 880).

As the Commissioner contends, and this Court agrees, Plaintiff's claim that the ALJ was "misguided" in finding Dr. Rashid and Ms. Parker stating Plaintiff's

limitations had been present prior to the time they completed their opinions is without merit (Dkt. No. 19 at 8). The ALJ determined that these opinions were inconsistent with Plaintiff's daily activities and with treatment notes from Dr. Rashid and Ms. Parker. (T. 880). The ALJ noted several instances in the longitudinal record where Plaintiff self-reported a down mood even though the mental examination findings were all in normal limits. (T. 880).[5] In addition, the ALJ noted that Ms. Parker's treatment notes reflected that employment and limited interaction with others helped Plaintiff's symptoms by reducing their focus on their problems. (T. 880, 1565). Additionally, as the ALJ noted, Plaintiff indicated to Dr. Rashid that "his medications help 'stabilize mood, improve sleep, and reduce anxiety (triggered by stress of Crohn's disease flare ups) but admits feeling 'ups and downs' moods at time.'" (T. 880, 1563).

Further support in finding Ms. Parker's opinion unpersuasive is that a licensed clinical social worker is not considered to be an acceptable medical source and, therefore, LCSW Parker's opinion was not entitled to controlling weight. *See Daniel J. v. Kijakazi*, No. 21-CV-1121 (ATB), 2022 WL 17177619, at *10 (N.D.N.Y. Nov. 23, 2022) (citing *Martino v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 118, 128 (W.D.N.Y. 2018)) (holding licensed clinical social workers are not an

---

[5]  The citation refers to (T. 604, 608, 611-12, 615-16, 619, 630, 634, 645, 648, 651, 656, 659-60, 665-66, 669, 672, 676, 679, 684, 687, 1765, 1768).

"acceptable medical source"; accordingly, their opinions are not entitled to controlling weight). However, an ALJ "should consider information from 'other sources,' such as social workers, which 'may also help … to understand how [the claimant's] impairment affects [their] ability to work.'" *Krach v. Colvin*, No. 13-CV-1089 (GTS/CFH), 2014 WL 5290368, at *14 (N.D.N.Y. Oct. 15, 2014) (quoting 20 C.F.R. § 404.1513(e)) (alterations in original). The Commissioner is "free to decide that the opinions of 'other sources' … are entitled to no weight or little weight," but "those decisions should be explained." *Piatt*, 80 F. Supp. 3d at 493 (citation omitted).

It is not error for the ALJ to assign limited weight to a treating physician's opinion where their opinions are contradicted with their own objective evidence and evidence from other providers. *See James N. v. Comm'r of Soc. Sec.*, No. 18-CV-1324 (CFH), 2020 WL 1140498, at *8 (N.D.N.Y. Mar. 6, 2020). Although Plaintiff points to treatment notes where they sometimes presented anxious or otherwise having non-normal mental status examinations, the plethora of normal mental status examinations in the longitudinal record provide substantial evidence to support the ALJ's determination to reject those portions of Dr. Rashid and Ms. Parker's opinions showing marked or extreme limitations. (Dkt. No. 11 at 21; T. 880). The ALJ has the discretion to weigh the evidence of record and resolve any conflict therein. *See Bliss v. Colvin*, No.13-CV-1086 (GLS/CFH), 2015 WL

457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *see also  Petell v. Comm'r of Soc. Sec.*, 12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).  The ALJ was therefore within their discretion to accord Dr. Rashid and Ms. Parker's opinions little weight because record evidence of generally unremarkable clinical findings failed to support the marked and extreme limitations opined in their medical source statements. It was, therefore, not error for the ALJ to accept only those portions of the opinion evidence that were consistent with the evidence in the record.

### C. Rajiv Shah, M.D.

Plaintiff contends that "despite the AC's explicit concern with the ALJ's failure to address source statements from Dr. Shah, the ALJ focused solely upon Dr. Shah's endorsement of various exertional, postural, or other physical limitations . . ." rather than his mental impairments. (Dkt. No. 11 at 23). Both of Dr. Shah's medical statements were submitted via a form titled "Crohn's & Colitis Medical Source Statement." Thus, Dr. Shah's opinions focused on Plaintiff's limitations due to Crohn's. (T. 707-11, 1839-42). There were only two questions regarding mental impairments; "do emotional factors contribute to the severity of your patient's symptoms and functional limitations" and "identify any psychological conditions affecting your patient's physical condition." (T. 708,

1839). In the December 15, 2021 statement, Dr. Shah opined that emotional factors do contribute to the severity of Plaintiff's symptoms and functional limitations and that the psychological condition affecting him was anxiety. (T. 708). In the January 2, 2023 statement, Dr. Shah opined that he did not know if emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations, but Plaintiff's anxiety was still a psychological condition affecting his physical condition. (T. 1839).

In the December 15, 2021 report, Dr. Shah indicated that claimant : (1) could sit for one hour at a time and "at least 6 hours" in an eight-hour workday; (2) could stand for 15 minutes; (3) could walk three blocks; and (4) required the ability to change position at will, but did not estimate a total time that Plaintiff could stand and/or walk in a workday. (T. 708). Dr. Shah also limited Plaintiff to "rarely" lifting up to ten pounds, and occasionally performing postural activities, such as twisting, stooping, crouching, or climbing. (T. 709). Lastly, Dr. Shah opined that Plaintiff: (1) would take unscheduled restroom breaks during the workday of up to ten minutes "at least every hour;" (2) would be off-task five percent of the workday; and (3) absent from work about three days per month. Dr. Shah noted that Plaintiff was capable of low stress work and required ready access to a restroom. (T. 710).

In the January 2023 report, Dr, Shah opined that Plaintiff was capable of: (1) sitting between forty-five minutes and two hours at a time, and about four hours in an eighty-hour workday; (2) standing for fifteen minutes and walking two blocks at a time and less than two hours total in an eight-hour workday; (3) occasionally lifting up to ten pounds, rarely lifting up to fifty pounds, frequently twisting or stooping, and occasionally crouching or climbing. (T. 1839-40). Dr. Shah further opined that Plaintiff would need unscheduled, "unpredictable" breaks during the workday that would last for ten minutes and would have to lie down for ten minutes at "unknown" intervals, along with the ability to change position at will and have ready access to a restroom. (T. 1840). Dr. Shah again opined that Plaintiff would be off-task five percent of an eight-hour workday and would be capable of low stress work but reduced his absences to about one day per month. (T. 1841).

The ALJ found Dr. Shah's opinion not to be persuasive except for that portion which opined that Plaintiff would require ready access to a restroom due to his history of Crohn's disease. (T. 883). The ALJ found Dr. Shah's opinion regarding Plaintiff having exertional, postural, or other physical limitations, besides the availability of a restroom, inconsistent with the available medical evidence. (*Id*.). The ALJ noted that throughout the period at issue, Plaintiff had been receiving infusions of Vedolizumab to treat his Crohn's disease, and that the record did not reflect any restrictions placed on his activity by Dr. Shah. (*Id*.).

18

Further, following infusions in July 2021, October 2022, December 2022, and February 2023, Plaintiff was able to "resume work without restrictions," and was capable of "walking, driving, stairs, [and] lifting, as tolerated" (T. 695, 883, 1498, 1520, 1531, 1533, 1543, 1545). The ALJ noted that these reports did not show any significant clinical abnormalities or reports that Plaintiff's infusions were ineffective or offered waning control over his symptoms. (T. 883). Further Dr. Shah's report showed that Plaintiff responded well to treatments, and the ALJ noted that Dr. Shah's November 11, 2020 report stated that Plaintiff was "doing all right but [he] has episodes of diarrhea followed by regular bowel movements. He deni[ed] any abdominal pain." (*Id*.). The ALJ found it noteworthy that Plaintiff's March 29, 2021 blood work was "essential[ly] unremarkable", and that the clinical evidence related to Plaintiff's Crohn's disease showed no evidence of active disease on the most recent colonoscopy. (T. 883).

## VI.    <u>RFC</u>

### A. Legal Standard

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis … A 'regular and continuing basis' means eight hours a day, five days a week, or an equivalent work schedule." *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL

252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F. 3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb. 13, 2019); *Genier v. Astrue*, 606 F. 3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions a plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F. 2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens*, 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the

evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F. 2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart*, 312 F. 3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.*, 692 F. 3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

## B. Analysis

Plaintiff objects to the RFC because it does not sufficiently account for their inability to maintain an acceptable level of work pace and attendance. (Dkt. No. 11 at 12-18). However, the ALJ explained his reasons for rejecting Dr. Rashid and Ms. Parker's opinions that Plaintiff would be off task for more than 25% of the day. (T. 569, 1548, 1552). As discussed, the ALJ explained that Dr. Rashid and

Mr. Parker's notes did not suggest marked or extreme limitations in these areas of functioning, as the overall mental status examinations were normal. (T. 569). "There is significant case law indicating that the ALJ's limitation of a plaintiff to 'simple, routine tasks' and 'working primarily alone, with only occasional supervision' accounts for [his or] her limitations for performing activities within a schedule and maintaining regular attendance." *Shannon v. Berryhill*, No. 6:15-CV-6769, 2018 WL 6592181, at *3 (W.D.N.Y. Dec. 13, 2018) (citing cases). Thus, the ALJ's assessment of Plaintiff's ability to maintain schedule and work pace was adequately accounted for in the RFC.

Similarly, Plaintiff's argument that the RFC failed to sufficiently account for their ability to interact with others fails, because the ALJ's decision to reject these potions of the opinion evidence finding significant limitations in these areas of functioning was supported by substantial evidence. The ALJ found moderate limitations in interacting with others, noting Plaintiff's wife's statement that Plaintiff socialized less and no longer wanted to leave the house. (T. 875-76). The RFC limits Plaintiff to interacting with others "occasionally … with the general public, coworkers or supervisors." (T. 877); *See also Whipple v. Astrue*, 479 F. App'x 367, 370 (2d Cir. 2012) (summary order) (holding that the consultative examiners' conclusion that plaintiff's depression and anxiety caused moderate limitations in social functioning way sufficiently accounted for where the RFC

limited the plaintiff to simple tasks and a low-stress environment). Thus, the RFC

reasonably accounted for moderate limitations in relating and interacting with

others, and such conclusion was supported by substantial evidence in the record.

To the extent that Plaintiff argues that the RFC did not adequately account for

his limitations in handling stress, the RFC limited Plaintiff to "performing

unskilled tasks requiring little or no judgment with simple duties that can be

learned on the job in a short period of time, low stress work which is defined as

work with simple work-related decisions and few workplace changes." (T. 877).

Because the objective medical evidence did not support marked limitations in

handling stress, substantial evidence supports the RFC insofar as it limits Plaintiff

to simple tasks with minimal interactions with others or changes in his

environment. (*Id.*).

Although Plaintiff disputes the ALJ's RFC assessment and believes that the

medical evidence supported greater limitations than those accounted for in the

RFC, the ALJ provided sufficient reasoning for his conclusions relating to the

medical and opinion evidence and his explanation is supported by the Court's

review of the evidence. It is not the Court's role to re-weigh that evidence. *See*

*Warren v. Comm'r of Soc. Sec.*, 15-CV-1185 (GTS/WBC), 2016 WL 7223338, at

*9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a

finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence

presented at the administrative hearing … nor will it determine whether [the applicant] was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'"), *report-recommendation adopted* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016) (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996)) (collecting cases). Indeed, the ALJ had "both the ability and the responsibility to resolve conflicts in the evidence and to weigh all the available evidence 'to make an RFC finding that is consistent with the record as a whole.'" *Carbee v. Comm'r of Soc. Sec.*, No. 1:17-CV-0051 (GTS), 2018 WL 333516, at *14 (N.D.N.Y. Jan. 9, 2018) (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Further, "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, [the ALJ is] entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta*, 508 Fed. App'x at 56.

Here, there is sufficient evidence to support the ALJ's determination that Plaintiff's mental and physical impairments were not more severe than set forth in the RFC. Having carefully reviewed the treatment notes that Plaintiff highlights, and the totality of Plaintiff's medical records, the Court finds that the ALJ's RFC is supported by substantial evidence, bearing in mind that "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Even

assuming, *arguendo*, that the record evidence could provide substantial evidence

for a conclusion that Plaintiff was disabled by his mental health conditions, that is

not the standard the Court applies. If supported by substantial evidence, the

Commissioner's finding must be sustained "even where substantial evidence may

support the Plaintiff's position and despite that the Court's independent analysis of

the evidence may differ from the Commissioner's]." *Rosado v. Sullivan*, 805 F.

Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the

Commissioner's determination considerable deference and may not substitute "its

own judgement for that of the [Commissioner], even if it might justifiably have

reached a different result upon a de novo review." *Valente v. Sec'y of Health &*

*Human Servs.*, 733 F. 2d 1037, 1041 (2d Cir. 1984). As the ALJ's mental RFC

determination is supported by the totality of the record before him and by

Plaintiff's activities, the ALJ's determination must be affirmed.

## VII.   <u>FINDING FROM A DIFFERENT AGENCY</u>

Plaintiff argues that the ALJ failed to comply with the AC's remand order by

not properly considering the disability rating assigned by the Veteran's

Administration. (Dkt. No. 11 at 18). As the Commissioner correctly contends,

"Plaintiff's argument fundamentally misapprehends both the AC Order and the

governing law." (Dkt. No. 19 at 5).

As the Commissioner quotes from the AC Order, "20 C.F.R.

§ 404.1520b(c)(1) and 20 C.F.R. § 404.1504 instruct that [an ALJ] will <u>not</u> provide

any analysis in [his or her] decision about a decision made by any other

governmental agency regarding the issues of disability" (Dkt. No. 19 at 6, T. 1537)

(emphasis in original). The first regulation cited in the AC Order provides that,

because decisions such as the VA finding are "inherently neither valuable nor

persuasive to the issue of whether [a claimant] is disabled," ALJs "will *not* provide

any analysis about how [they] considered such evidence." (Dkt. No. 19 at 6)

(emphasis in original); *see also* 20 C.F.R. § 404.1520b(c), (c)(1). The second

regulation cited in the AC Order explains that, because decisions by "agencies . . .

such as the Department of Veterans' Affairs" relate to "their own programs" and

are based on "their own rules," ALJs "will not provide any analysis" about such

decisions. (Dkt. No. 19 at 6); *see also* 20 C.F.R. § 404.1504.

Here, while the ALJ stated that he "considered the VA finding [,]" he

immediately stated the VA finding is "inherently neither valuable nor persuasive."

(T. 883). Therefore, while the ALJ openly considered the VA finding, the ALJ

complied with the regulations by not providing any analysis on the finding to make

their determination.

Considering the foregoing, the Court finds the ALJ did not err in their RFC assessment, which is supported by substantial evidence, and the ALJ applied the correct legal standards. Accordingly, remand is not required.

**WHEREFORE,** based on the findings above, it is

**ORDERED,** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED**; and it is further

**ORDERED,** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **GRANTED**; and it is further

**ORDERED,** that the decision of the Commissioner be **AFFIRMED**, and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**.

Dated: March 28, 2025

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge